IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENNETH WADE LONG,      )
                                 )
      Plaintiff,         )
                                 )
      v.               )     Civil Action No.: 2:16cv847-WC
                                 )
NANCY A. BERRYHILL,       )
Acting Commissioner of Social Security,  )
                                 )
      Defendant.        )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Kenneth Wade Long ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act, alleging he became disabled on October 1, 2009. Plaintiff later amended his alleged onset date to January 15, 2014.[1] Plaintiff's application was denied at the initial administrative level. He then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ

---

[1] In Plaintiff's memorandum opposing the Commissioner's decision, Plaintiff purports to "amend[] his alleged onset date to [December 9, 2014]." Doc. 11 at 1. The alleged onset date must be established by the ALJ when determining that an individual is disabled because the date may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits. *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775-76 (11th Cir. 2010). Here, the ALJ found Plaintiff's alleged onset date to be January 15, 2014. *See* Tr. 16. The undersigned knows of no authority under which he may *sua sponte* accept Plaintiff's purported amendment to his alleged onset date at this stage in the game, and Plaintiff has provided the court with none. Thus, the undersigned will proceed to review the ALJ's determination with the amended onset date of January 15, 2014, which was the date considered by the ALJ.

issued an unfavorable decision on April 23, 2015, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 15); Def.'s Consent to Jurisdiction (Doc. 14). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

---

[2]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?
An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty years old on the date of the hearing before the ALJ, and has a high school education. Tr. 30-31. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of January 15, 2014[,] through his date last insured of December 31, 2014[.]" Tr. 16. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "obesity with reports of pain of unknown etiology and sciatica." Tr. 16. At Step Three, the ALJ found that Plaintiff "[t]hrough the date last insured, . . . did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" Tr. 17. Next, the ALJ articulated Plaintiff's RFC as follows:

After careful consideration of the entire record, the undersigned finds that, through the last date insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that the claimant can stand and/or walk at least one hour without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant cannot climb ropes, poles, or scaffolds. The claimant can occasionally climb ladders, ramps and stairs. The claimant can frequently use his upper extremities for reaching overhead. The claimant can frequently use his lower extremities for pushing, pulling and the operation of foot controls. The claimant can frequently balance, stoop, kneel and crouch. The claimant can occasionally

crawl. The claimant can frequently work in humidity, wetness and extreme temperatures. The claimant can frequently work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant can frequently work with operating hazardous machinery. The claimant can frequently operate motorized vehicles. The claimant can frequently work while exposed to vibration.

Tr. 17-18. At Step Four, having consulted with a VE, the ALJ concluded that, given Plaintiff's RFC "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a textile supervisor [ ] and tow motor operator/winder/card operator/pinner[.]" Tr. 19. The ALJ noted that "[t]his work did not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" Tr. 19. The ALJ further found that, "[a]lthough [Plaintiff] is capable of performing past relevant work there are other jobs existing in the national economy that he is also able to perform." Tr. 20. Thus, the ALJ found, as an alternate finding for Step Five, that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed[.]" Tr. 20. The ALJ identified several representative occupations, including packager, store laborer, and janitor. Tr. 21. Accordingly, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from January 15, 2014, the amended alleged onset date, through December 31, 2014, the date last insured[.]" Tr. 21.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents five issues to this court which he claims are reversible error. First, Plaintiff argues that "[t]he ALJ failed to accord proper weight to the treating physician, Dr.

Dolores Victoria[,]" and that the "[t]he ALJ substituted his own opinion for the opinion of Dr. Dolores Victoria." Doc. 11 at 1. Second, Plaintiff argues that "[t]he [f]inding that [he] can perform past work is not supported by [s]ubstantial [e]vidence and is not in accordance with proper legal standards." *Id*. Third, Plaintiff argues that he "Meets Grid Rule 201.14." *Id*. Fourth, Plaintiff argues that "[t]he case should be remanded because the ALJ failed to assess the intensity and persistence of [his] symptoms pursuant to Social Security Ruling 16-3p." *Id*. Finally, Plaintiff argues that the ALJ "failed to consider all of [his] severe impairments." *Id*.

## V.    DISCUSSION

### A.    Whether the ALJ erred in failing to give appropriate weight to the opinions of Plaintiff's treating physician.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause to discount a treating physician's opinion exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips,* 357 F.3d

at 1241. With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id.* at 1240–41. The Eleventh Circuit has recently re-emphasized that courts "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Here, Plaintiff argues the ALJ committed reversible error by giving little weight to the opinion of Plaintiff's treating physician, Dr. Dolores Victoria. Doc. 11 at 6-8. Dr. Victoria completed a functional capacity evaluation of Plaintiff on December 9, 2014, which concluded, *inter alia*, that Plaintiff had chronic and continuous pain as a result of a medical condition; that he would need to rest constantly during the day; and that, as a result of his condition, attendant limitations, pain and/or any side effects of medication(s), Plaintiff "would miss three or more days per month from work." Tr. 262.

The ALJ afforded Dr. Victoria's opinion "little weight." Tr. 20. In so doing, the ALJ provided the following reasoning:

> The [Social Security] Regulations [ ] recognize that treating sources are important sources of medical evidence and that their opinions about the nature and severity of an individual's impairment are entitled to special significance, and sometimes the medical opinions of treating sources are entitled to controlling [weight]. However, it is an error to give an opinion controlling weight simply because it is the opinion of the treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or it is inconsistent with the other substantial evidence in the case record[.] *Dr. Victoria's opinion is not consistent with the totality of the evidence, including the treatment notes and diagnostic tests. In fact, the treatment notes really show very little impairment at all.* Accordingly, this opinion is therefore given minimal evidentiary weight[.]

Tr. 19 (emphasis added).

A review of the ALJ's opinion in its entirety further supports the ALJ's reasoning for discounting Dr. Victoria's opinion. Specifically, the ALJ noted that Plaintiff's "[p]hysical examinations were generally unremarkable[,]" and that he was "noted to have normal range of motion, muscle strength, and stability in all extremities, with no pain on inspection and no edema." Tr. 18-19. The ALJ also noted that "[r]ecords dated since the amended alleged onset date are also rather unremarkable. Although [Plaintiff] complained of intense pain, February, April and June 2014 physical examination records all note normal range of motion, muscle strength, and stability in all extremities with no pain on inspection. . . . A lumbar x-ray was negative." Tr. 19. Further, the ALJ noted that Plaintiff's "ability to maintain his household, live alone, and drive, in conjunction with the medical evidence demonstrating minimal abnormalities, reflect[ed] a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments." Tr. 19. In sum, the ALJ concluded that, "[w]hile records confirm some complaints of back pain, there is little to establish any other impairments, and findings on exam are fairly normal." Tr. 19.

As noted previously, an ALJ must give the opinion of a treating physician "substantial or considerable weight unless good cause is shown to the contrary." *Phillips*, 357 F.3d at 1240. "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* at 1240-41. Dr. Victoria's opinion was discounted in large part due to the fact that subjective medical records did not support Dr. Victoria's opinion. Indeed, the ALJ

noted that physical examinations of Plaintiff were unremarkable, and that he was noted to have normal range of motion, muscle strength, and stability in all extremities, *with no pain on inspection*. Tr. 19; Tr. 248 (Ex. F) (physician report on April 9, 2014, noting that Plaintiff has "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection."). This reason is considered "good cause" to discount the opinion of Dr. Victoria.[5] *See Phillips*, 357 F.2d at 1240. And, because the Eleventh Circuit directs courts not to second guess the ALJ's discount of a physician's opinion so long as the ALJ provides proper reasoning, the undersigned's inquiry ends with the conclusion that the ALJ provided proper justification for discounting the opinion of Dr. Victoria. *See Hunter*, 808 F.3d at 823. Accordingly, Plaintiff's argument fails.

**B.** **Whether the ALJ erred in finding that Plaintiff could perform past work.**

Plaintiff argues that the ALJ's decision should be reversed because the ALJ's finding that Plaintiff can perform past work is not supported by substantial evidence, nor is it in accordance with proper legal standards. Doc. 11 at 8-10. Plaintiff challenges the ALJ's failure to "consider any of the duties of [Plaintiff's] past work" and his failure to evaluate Plaintiff's "ability to perform those duties in spite of his impairments." *Id*. He

---

[5] Reading the ALJ's opinion as a whole, the undersigned also notes that the ALJ concludes Plaintiff's own testimony at the hearing is contrary to his complaints of back pain and his ability to work. The ALJ noted that Plaintiff's "ability to maintain his household, live alone, and drive, in conjunction with the medical evidence demonstrating minimal abnormalities, reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments." Tr. 19. Plaintiff does not argue that the ALJ's characterization of Plaintiff's testimony at the hearing is misplaced, and the undersigned would note that this evidence also supports the ALJ's decision to discount the opinion of Plaintiff's treating physician, as it provides evidence supporting a contrary finding to Dr. Victoria's conclusion that Plaintiff is disabled and unable to work because of chronic and continuous pain.

points the court to several cases where the court found reversible error when the ALJ failed to develop the particulars of the plaintiff's past relevant work. *Id*. at 8-10 (citing *Johnson v. Colvin*, No. 8:14-cv-0041-T-27TBM, 2015 WL 1423127 (M.D. Fla. March 27, 2015); *Butler v. Comm'r of Soc. Sec.*, Case No. 8:15-cv-2356-T-27JSS, 2016 WL 7217253 (M.D. Fla. Nov. 11, 2016); and *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990)).

Social Security Ruling 82-62 provides that, in finding that an individual has the capacity to perform a past relevant job, the determination must contain a "specific finding[ ] of fact . . . as to the physical and mental demands of the past job/occupation." SSR 82-62 (S.S.A.), 1982 WL 31386 at *4. The Ruling further provides that a claimant can return to past relevant work if he can perform the specific job he performed, either in the manner he performed it, or as it is usually performed in the national economy. *See Dudley v. Apfel*, 75 F. Supp. 2d 1381, 1382 (N.D. Ga. 1999).

During the hearing before the ALJ, the following exchange occurred with Plaintiff:

> ALJ: . . . And you have a long history in the yard – in the clothing industry. Is that correct?
> Plaintiff: Yes, sir. Textile industry, yes.
> ALJ: . . . What did you do [when you worked at Avondale Mills]?
> Plaintiff: I started on cleanup, and I worked my way up. I was a technician, and finally a supervisor.
> ALJ: Okay. Let's start in '99, what were you – were you still there in '00?
> Plaintiff: Yes, sir.
> ALJ: And what were you doing in '99?
> Plaintiff: Supervisor.
> ALJ: Tell me briefly, who were you supervising, what department, et cetera?
> Plaintiff: I supervised the entire plant, and we started out with supervisors, and they cut back and they give us the whole mill. So I don't know if you know anything about the processes, but you had carding,

spinning, winding, and then shipping, you know, took care of customer service.

ALJ: Okay. And you supervised all of that.

Plaintiff: Yes, sir.

. . .

ALJ: So then you moved over the Parkdale [after Avondale closed in 2006]. Is that correct?

Plaintiff: Yes, sir.

ALJ: What did you do there?

Plaintiff: The same thing.

ALJ: You were supervisor?

Plaintiff: Yes, sir.

. . .

ALJ: So then you moved to American Fiber [after Parkdale closed]. Is that correct?

Plaintiff: Yes, sir.

ALJ: And what did you do there?

Plaintiff: That was air texturing materials that goes into sofas[.] . . . But, basically, I was doing the same thing.

. . .

And I [later] got a job offer in Birmingham, CRB Carpet and Rug Backing.

ALJ: And what type of equipment did you run at American?

Plaintiff: Well, tow motors, you know, that kind of thing. The nature of my work, as a supervisor, was a working supervisor. I had to kind of fill in, you know, mechanical work, whatever needed to be done. . . .

And, you know, CRB, the last place I worked at, pretty much the same nature. . . .

ALJ: . . . And what happened?

Plaintiff: I was terminated.

ALJ: And why?

Plaintiff: The – they said it was poor job performance. But, basically, the plant manager that hired me, they got rid of him, let him go. So it's kind

of like a coaching staff. They let all the managers go, and got new managers.
. . .

    ALJ: And what were you specifically doing at that location?
    Plaintiff: I was supervising.

    . . .

    ALJ: But now you mentioned before that sometimes supervising involved actually hands on work as well. Was there hand[s] on work involved at that location?
    Plaintiff: Yes, sir.
    ALJ: And what type of work did you do specifically when you had to get involved?
    Plaintiff: Mechanical work, work on, you know, machinery parts, help the technician out, do tow motor work, you know, change propane tanks, batteries, you know, just whatever, you know. . .
    ALJ: So generally, you didn't run the process, you made sure the process continued to run.
    Plaintiff: Yes, sir. I supervised all the processes of the whole plant, but, you know, I would have to pitch in.

Tr. 31-34. Later, the ALJ turned to examine the VE. The following exchange occurred.

    ALJ: Ms. Clemmons, are you able to put [Plaintiff's] past work activity into context with our regulations?
    VE: Yes, sir. . . .
    Mr. Long has worked as a textile supervisor. The DOT number is 689.130-034. And that's classified as light and skilled, with an SVP of 7. The testimony indicates that he had to assist in a variety of jobs, including tow motor operator, winder, card operating, and spinner. I have each of those separate DOT numbers, but would note they're all medium and all semi-skilled, with an SVP of 3. And he had to do maintenance on industrial machines. That is heavy and skilled, with an SVP of 7. . . .
    ALJ: Let me ask you a question, in terms of the textile supervisor, does DOT allow for the occasional backfill, for lack of a better definition, within that number?

    . . .

    VE: It does specifically say that they may have to set up repair, and adjust machines, and perform other duties of their workers, but it does not, as far as skill or – not really skill, but exertional level does not indicate the more higher exertional level, but it does describe that in the DOT description.
    ALJ: All right. Counsel, the direction I'm leaning in and I'll leave it up to you, do you want me to list all three jobs that he referenced, or do you

want me to put in context with what she just shared, occasionally performed at medium?

      Plaintiff's attorney: That's, you know, that's fine.

      ALJ: All right. . . .And, Ms. Clemmons, does that sound logical to you as well, or am I overstepping?

      VE: No. I believe he's in the light job with the occasional medium duties is acceptable. . . .

      ALJ: And consistent with his testimony?

      VE: Yes, sir. . . . And with my knowledge of those jobs that the textile industry has.

      . . .

      ALJ: . . . So we have an individual approaching advanced age, . . . a high school education, good work history, and work history as characterized by the vocational expert. Counsel, any objection?

      Plaintiff's attorney: No, sir. No objection.

      ALJ: . . . Ms. Clemmons, please consider an individual with [Plaintiff's] vocational profile and the following limitations. Limited to medium work activity, except this individual can stand and/or walk at least one hour without interruption, and a total of at least six hours over the course of an eight-hour workday. This individual can sit at least two hours without interruption, and a total of at least six hours over the course of an eight-hour workday. This individual cannot climb ropes, poles, or scaffolds. This individual can occasionally climb ladders, ramps, and stairs. The individual can frequently use the upper extremities to reach overhead. This individual can frequently use their lower extremities for pushing, pulling, and the operation of foot controls. This individual can frequently balance, stoop, kneel, and crouch. This individual can occasionally crawl. This individual can frequently work in humidity, wetness, and extreme temperatures. This individual can frequently work in poorly ventilated areas. This individual cannot work at unprotected heights. This individual can frequently work with operating hazardous machinery. This individual can frequently operate motorized vehicles. This individual can frequently work while exposed to vibration. Ms. Clemmons, would this individual be able to perform his past relevant work, first, in accordance with the DOT and/or at – is consistent with his testimony?

      VE: Yes, Your Honor, both past with the DOT description and then with occasional medium work, as testified and as agreed.

Tr. 47-50.

Clearly, the exchange between the ALJ and Plaintiff shows that the ALJ solicited

testimony from Plaintiff regarding the type of hands-on work he performed in his previous

position. *See* Tr. 34. Indeed, Plaintiff provided that he performed mechanical work, helped the technicians out, and changed propane tanks and batteries on occasion. Tr. 34. In determining Plaintiff could perform past relevant work, the ALJ specifically opined that Plaintiff could perform not only his job as a supervisor but also jobs as a tow motor operator/winder/card operator/spinner, accounting for the work described by Plaintiff outside the confines of traditional supervision. Tr. 47-50. Further, in concluding that Plaintiff was able to perform his past relevant work, the VE specifically noted that Plaintiff had to occasionally perform the tasks of which he testified. *See* Tr. 47-50. The ALJ may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work when determining whether a claimant can perform past relevant work. *See Simpson v. Comm'r of Soc. Sec*., 423 F. App'x 882, 884 (11th Cir. 2011). Thus, Plaintiff's argument fails.

**C.     Whether the ALJ erred in failing to find that Plaintiff meets Grid Rule 201.14.**

Plaintiff argues the ALJ erred in failing to find that Plaintiff meets Grid Rule 201.14. Doc. 11 at 11. Plaintiff asserts that he was fifty years old when he was last insured, and once his testimony was accepted as credible by the ALJ, he was eligible for benefits or at least limited to sedentary work under the above-referenced rule. *Id.*

Once a claimant proves that he can no longer perform past relevant work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). One way in which the ALJ may fulfill this burden is

through reliance upon the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("Grids") provide applicants with "an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments." *Phillips*, 357 F.3d at 1240. The Grids provide for ALJs "to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience[,]" as each of those factors may limit the number of jobs "realistically available" to a claimant. *Id*. Combinations of those factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Importantly, however, an ALJ relies upon the Grids *only* when he has determined that the claimant cannot perform past relevant work. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process . . . [and,] [i]f nonexertional impairments exist, . . . may use the Medical-Vocational Guidelines as a framework to evaluate vocational factors[.]"); *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987) ("[O]nce the claimant has established that she cannot return to her past relevant work the burden shifts to the Secretary to prove that the claimant is capable, considering her age, education, and work experience, of engaging in any other kind of gainful employment[.] At this stage, the Medical Vocational Guidelines[,] may come into play.") (internal citations omitted).

Here, the ALJ did not determine that Plaintiff could not perform past relevant work. In fact, he concluded just the opposite. Tr. 19-20. Thus, Plaintiff's argument that Plaintiff meets Grid Rules 201.14 is inapplicable in this case and, therefore, unpersuasive.

**D.    Whether the ALJ erred in failing to assess the intensity and persistence of Plaintiff's symptoms pursuant to Social Security Ruling 16-3p.**

Plaintiff argues that the ALJ failed to assess the intensity and persistence of Plaintiff's symptoms pursuant to Social Security Ruling 16-3p. Doc. 11 at 11-13. Plaintiff asserts that the ruling is retroactive.[6] *Id.*

Social Security Ruling 16-3p "provides guidance about how [the Social Security Administration] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims" under the Social Security Act.  SSR 16-3p, 2016 WL 1119029, at *1. The ruling announced that the Social Security Administration "would no longer assess the 'credibility' of an applicant's statements, but would instead focus on determining the 'intensity and persistence of [the applicant's] symptoms.'" *Cole v. Colvin*, 831 F. 3d 411, 411 (7th Cir. 2016) (alteration in original). Thus, "[t]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."  *Id.* (emphasis removed).

---

[6] On January 17, 2018, Plaintiff filed a "Supplemental Memorandum in Support of Disability." Doc. 16. In that memorandum, Plaintiff "acknowledges that the Eleventh Circuit issued decisions [in 2017] holding that SSR-16-3p will not be applied retroactively." Doc. 16 at 1. Plaintiff goes on to state that he "reserves the issue as stated in his Memorandum[,]" and that he "maintains that the denial of benefits should be reversed on the other issues raised by the Plaintiff in Plaintiff's Memorandum in Support of Disability." *Id.* It is unclear from these statements whether Plaintiff is maintaining that the Commissioner's decision should be reversed based upon the argument that the ALJ failed to properly apply SSR 16-3p. Thus, to the extent Plaintiff continues to maintain the argument as a basis for this court to reverse and remand the case, the undersigned addresses the argument above.

The ruling further explains that an ALJ is to use a two-step process to evaluate a claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *3-4. At step one, an ALJ must determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce a claimant's alleged symptoms. *Id*. In so doing, the ALJ should not consider "whether the severity of [a claimant's] alleged symptoms is supported by the objective medical evidence." *Id*. at *4. Instead, if a claimant has a medically determinable impairment that he alleges causes him extreme pain and limits his ability to function, the ALJ should find that the claimant "has a medically determinable impairment that could reasonably be expected to produce the symptom of pain[,]" and should proceed to step two. *Id*. At step two, the ALJ should evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which those symptoms limit his ability to perform work-related activities. *Id*. In making that determination, the ALJ should "examine the entire case record, including the objective medical evidence;[7] [a claimant's] statements about the intensity, persistence, and limiting effects of symptoms; statements and other information[8] provided by medical sources and other persons; and any other relevant evidence in [a claimant's] case record." *Id.* (footnotes supplied). Importantly, an ALJ must not "disregard [a claimant's] statements about the intensity, persistence, and

_____

[7] Objective medical evidence includes medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). 20 C.F.R. § 404.1529(a).

[8] Other evidence, described in 20 C.F.R. §§ 404.1512(b)(2)-(8), 20 C.F.R. §§ 404.1513(b)(1), (4), and (5), and 20 C.F.R. § 404.1513(d), includes statements or reports from (1) a claimant, (2) the claimant's treating or non-treating source, and (3) others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how the claimant's impairment(s) and any related symptoms affect the claimant's ability to work.

limiting effects of symptoms *solely* because the *objective* medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id*. at *5 (emphasis added). However, "[a] report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors [the Social Security Administration] must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Id*.

Here, in assessing the intensity and persistence of Plaintiff's symptoms, the ALJ stated, in pertinent part:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Tr. 18. The ALJ then discussed objective medical evidence as well as other evidence as described in the regulations to support that conclusion. Particularly, the ALJ noted that Plaintiff's physical examinations were "generally unremarkable"; that he had "moderate musculoskeletal pain with motion" in July 2013, but a "normal range of motion, muscle strength, and stability in all extremities, with no pain on inspection and no edema" in September and November 2013; and that despite complaints of intense pain since the amended alleged onset date, Plaintiff's February, April, and June 2014 physical examinations "all note normal range of motion, muscle strength, and stability in all extremities with no pain on inspection." Tr. 18-19. Upon conclusion of that discussion, the ALJ stated:

In sum, the undersigned considered but granted little probative weight to the claimant's testimony regarding the severity of his impairments and finds him not fully credible. As discussed above, the paucity of evidence does not support the claimant's ultimate allegation of disability. While records confirm some complaints of back pain, there is little to establish any other impairments, and findings on exam are fairly normal. Further, the claimant's ability to maintain his household, live alone, and drive, in conjunction with the medical evidence demonstrating minimal abnormalities, reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments. However, based on objective evidence of the claimant's obesity and pain, and the medical evidence as a whole, the residual functional capacity has been reduced to medium, with postural and environmental limitations.

Tr. 25.

Regardless of whether SSR 16-3p is to be applied retroactively to Plaintiff's claim, the undersigned concludes that the ALJ did not err because the ALJ's evaluation of Plaintiff's symptomatology does not conflict with the clarification set forth by SSR 16-3p regarding how an ALJ should evaluate the intensity and persistence of a claimant's alleged symptoms. Indeed, the ALJ followed the two-step process discussed above. In the first step, he determined that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." Tr. 18. In the second step, without assessing Plaintiff's credibility with regards to his character, the ALJ assessed Plaintiff's *symptom* credibility based upon the evidence in the record. Tr. 18. Further, the ALJ did not rely solely upon objective medical evidence to determine that Plaintiff's symptoms were not entirely credible, as prohibited by SSR 16-3p. Instead, the ALJ based his opinion on both objective medical evidence and "other" evidence within the record, which continues to be permissible under the new ruling. *See Cole*, 831 F. 3d at 411 (noting that "obviously administrative law judges will continue to assess the credibility of pain assertions by

applicants" but will not impeach a claimant's character in doing so). Thus, the undersigned concludes that, even assuming retroactivity of SSR 16-3p, the ALJ's analysis of Plaintiff's symptomatology complies with SSR 16-3p.[9] Thus, Plaintiff's argument fails.

E.     Whether the ALJ failed to consider all of Plaintiff's severe impairments.

Plaintiff's final claim is that the ALJ failed to consider Plaintiff's hypertension, fibromyalgia, carpal tunnel syndrome, and depression according to SSR 96-3p. Doc. 11 at 13. Plaintiff also argues that the ALJ failed to follow the "slight abnormality" standard in finding that Plaintiff's hypertension, fibromyalgia, carpal tunnel syndrome, and depression were not severe. *Id*.

At Step Two, the ALJ determined Plaintiff had the severe impairments of "obesity with reports of pain of unknown etiology and sciatica." Tr. 16. The ALJ also found that Plaintiff's "allegations of fibromyalgia, carpal tunnel syndrome[,] and depression [were] not medically determinable impairments" based upon a lack of evidence from an acceptable medical source. Tr. 16. The ALJ noted that Plaintiff "failed to submit any medical records showing significant complaints of or treatment for these conditions, or

---

[9] To conclude that the ALJ's evaluation of Plaintiff's symptom credibility is no longer permissible under SSR 16-3p would produce nonsensical results. Carried out, it would require the ALJ to turn a blind eye to the evidence of record and to accept at face value Plaintiff's claims of the intensity and persistence of his disability. That conclusion is not the purpose of SSR 16-3p. *See* SSR 16-3p, 2016 WL 1119029, at *1-2 ("[W]e clarify that subjective symptom evaluation is not an examination of an individual's character. . . .[W]e instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms."); *id*. at *2 ("In determining whether an individual is disabled, we consider all of the individual's symptoms, including pain, and the extent to which the symptoms can *reasonably* be accepted as consistent with the objective medical and other evidence in the individual's record.") (emphasis added). Instead, the purpose of SSR 16-3p is to prevent ALJs from discounting a claimant's statements regarding their symptoms based *solely* on the objective medical evidence. It requires ALJs to consider all of the evidence in the record when determining the credibility of a claimant's symptom persistence and intensity. The ALJ here has done just that.

clinical and laboratory diagnostic techniques indicating such from an acceptable medical source." Tr. 17.

Although Plaintiff asserts that the ALJ did not properly consider his hypertension, fibromyalgia, carpal tunnel syndrome, and depression as severe impairments, in his brief to this court, he fails to point to *any* evidence within his medical records of his fibromyalgia or carpal tunnel syndrome. *See* Doc. 11 at 13-15. Accordingly, any argument that the ALJ failed to consider those impairments is waived. *Sapuppo v. Allstate Floridian Ins. Co.,* 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). As to his hypertension and depression, Plaintiff references two medical records to support his argument that the ALJ failed to properly consider his hypertension and depression: one from April 2014 in which the record merely lists hypertension and depressive disorder, and the other from September 21, 2014, listing the same.

In addressing Plaintiff's hypertension, the ALJ noted:

> The medical evidence also reveals that the claimant has a history of treatment for hypertension. However, in the absence of medical records showing significant complaints or treatment for related symptoms, it is reasonable to conclude that this condition has not resulted in any significant limitations on the claimant's ability to do basic work activities and is therefore a non-severe impairment[.]

Tr. 16. An independent review of the medical evidence indicates that Plaintiff's hypertension was stable under medication. *See* Tr. 234, 240 (noting that hypertension was under "fair control"); Tr. 242 (noting hypertension is "stable on meds"). Plaintiff has not

pointed the undersigned to any evidence that contradicts the conclusion that Plaintiff's hypertension is controlled by medication, or any evidence that Plaintiff's hypertension "significantly limits [his] physical or mental abilit[y] to do basic work activities[,]" as required under SSR 96-3p to qualify the impairment as severe. *See* SSR 96-3p. Accordingly, Plaintiff's argument that the ALJ failed to consider his hypertension in accordance with SSR 96-3p fails.

Similarly, an independent review of the medical evidence does not indicate that Plaintiff's depression caused a significant limitation in his physical or mental ability to perform basic work activities, and Plaintiff has not pointed the court to records showing otherwise. Clearly, the ALJ considered Plaintiff's depression, but found that the depression was not a medically determinable impairment because the allegation lacked support from an acceptable medical source. *See* Tr. 16-17. Accordingly, because Plaintiff has not supported his argument that the ALJ failed to determine his depression was severe with any evidence from the record, and because the undersigned does not independently find such evidence, Plaintiff's argument that the ALJ failed to consider his depression in accordance with SSR 96-3p fails.

Finally, because the ALJ found that Plaintiff suffered from severe impairments and therefore continued past Step Two in the five-step analysis to determine disability, Plaintiff's argument that the ALJ did not follow the "slight abnormality" standard in

finding that Plaintiff's hypertension, fibromyalgia, carpal tunnel syndrome, and depression were severe impairments fails.

"Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986); *accord Stone v. Comm'r of Soc. Sec.,* 586 F. App'x 505, 511–12 (11th Cir. 1984). However, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 825 (11th Cir. 2010) (citations omitted); *accord Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). The finding of a single severe impairment is all that step two requires. *Heatly,* 382 F. App'x at 824–25.

As noted above, the ALJ here did not find Plaintiff's hypertension, fibromyalgia, carpal tunnel syndrome, and depression to be severe impairments. However, even if these impairments are severe as Plaintiff alleges, because the ALJ found that Plaintiff has at least one severe impairment, the ALJ did all that was required at Step Two. *Beck-Easley v. Colvin*, Civil Action File No. 1:13-CV-02869-JFK, 2015 WL 1401646, at * 7 (N.D. Ga. March 26, 2015). In other words, even if the ALJ should have considered Plaintiff's other impairments as severe, any failure to do so was harmless error because the ALJ continued past Step Two and did not deny Plaintiff benefits at that point. *See Medina v. Soc. Sec. Admin*., 636 F. App'x 490, 492-93 (11th Cir. 2016) ("Thus, even if Medina's other

conditions should have been categorized as severe impairments, any error was harmless because the ALJ determined that her obesity and 'thyroid cancer status post total thyroidectomy' were severe impairments, allowing him to move onto step three of the test."). Further, because the ALJ decided this case at Step Four, Plaintiff bears the burden of proving that his conditions preclude his ability to perform past relevant work. See 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.). As noted previously in this section, Plaintiff did not show that his hypertension, fibromyalgia, carpal tunnel syndrome, and depression caused significant limitations in his physical or mental ability to perform basic work activities. Accordingly, Plaintiff's argument that the ALJ failed to adequately consider Plaintiff's hypertension, fibromyalgia, carpal tunnel syndrome, and depression fails.

## VI.    CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 19th day of January, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE